IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BELLINGHAM, LLC, WESTERN FRONTIER ENTERPRISES, LLC, ASHBY ACRES LLC, for and in the name of INTERNATIONAL MONETARY SPECIALISTS LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>FIDELIS CAPITAL INVESTMENTS LIMITED,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:15CV335DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Fidelis Capital Investments Limited's Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(2), (3), (4), (5) & (6) and To Set Aside Judgment As Void Pursuant to Fed. R. Civ. Pro. 60(b). On May 10, 2017, the court held a hearing on the motion. At the hearing, Plaintiffs were represented by Donald L. Dalton and Defendant was represented by Steven M. Rogers. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs are Utah limited liability companies who were majority and controlling members of International Monetary Specialists, LLC ("IMS"), a Delaware limited liability company. The parties dispute where IMS's principal place of business was at the times relevant

to the present dispute. Plaintiffs allege that IMS's principal place of business was in Utah and Fidelis alleges that it was Delaware.

On or about July 11, 2013, IMS signed a Memorandum of Understanding ("MOU") with Fidelis. IMS was an expired Delaware entity when the parties signed the MOU. Fidelis knew, through contact with Joshua Trent, co-founder of IMS, that IMS was an expired Delaware company that did not have sufficient funds to revive itself in Delaware. Fidelis provided $2165.06 to Joshua Trent to revive IMS as a Delaware entity. Fidelis never registered the revived IMS to do business in Utah.

Pursuant to the MOU, Fidelis acquired IMS with the responsibility of securing its patent rights and establishing a $5 million licensing structure with a ten percent interest in profits to Plaintiffs. Plaintiffs allege that Fidelis' principal, Max Day, told Plaintiffs that Fidelis had millions of dollars behind it and that he had business ready and he would proceed.

When Fidelis took control over IMS there was a large outstanding bill for attorney fees to Greenburg Taurig for securing intellectual property developed by IMS co-founders John Golding and Joshua Trent. Fidelis contacted Greenburg Taurig and negotiated a settlement of IMS' attorney fees bill. Fidelis paid Greenburg Taurig $85,000.00 for the negotiated settlement.

However, Plaintiffs claim that they became suspicious when Defendant failed to pay for the prosecution of its patents. On April 3, 2014, patent counsel withdrew from representation with a patent application pending. The patent was issued but Plaintiff's claim that it was at their expense. At that point, Plaintiffs allege that Defendant went virtually silent. From time-to-time, Day would make an appearance with some excuse for why action had not been taken. Shortly before this action was filed, Defendant contacted Plaintiffs about unwinding the transaction. However, Defendant owed money to one of the Plaintiffs, which it was unwilling to release, and

nothing came of the proposal.

Plaintiffs filed the present action on March 2, 2015, alleging a cause of action for rescission for material breach and failure of consideration. Plaintiffs' Complaint sought rescission of the MOU, revocation of the First Amendment and Restatement of the IMS Operating Agreement, and restoration of IMS to its original owners.

Plaintiffs attempted service on Max Day at the Texas address Plaintiffs had for him but the constable was told that Max Day no longer lived at the residence and the person at the residence was a renter. Fidelis claims that Plaintiffs had contact information for multiple officers and directors of Fidelis, such as Jayson Lopez who signed the MOU, but Plaintiffs did not attempt to inform any of them of the pending lawsuit.

Since Defendant was a registered New Zealand limited company, Plaintiffs also made efforts to serve Defendant in New Zealand. Plaintiffs contacted the U.S. Department of State, Bureau of Consular Affairs, International Judicial Assistance and was told that New Zealand was not a party to the Hague Convention. Plaintiffs were then directed to the U.S. Department of Justice, Office of Foreign Litigation, which advised Plaintiffs to use a New Zealand process server.

Plaintiffs used WaiVista Limited, and its owner and server Raymon Terence, to attempt service on Defendant at Defendant's registered office and address for service. Keenan advised Plaintiffs that the office was vacant and looked as though it had been for some time. Keenan then attached the Summons and Complaint to the front door and took a picture. Keenan also signed a declaration stating that service of process was "in accordance with New Zealand statute." All of this, including the photograph and the date and place of service, appear in the Summons Returned Executed that Plaintiffs filed with this court.

The court entered Default Judgment against Defendant on February 1, 2016. In June 2016, one of the co-founders of IMS was included on an email sent by Knight Nguyen Investments ("KNI"), the successor in interest to Fidelis, in which KNI was attempting to set up an exclusive master agreement with another entity in the name of IMS. At the time, Plaintiffs had no knowledge of KNI and had not authorized the transfer of any rights from Fidelis to another entity under the MOU. At that point, Plaintiffs assert that Fidelis had no rights to give under the MOU because the MOU had been rescinded as a result of the default judgment on February 1, 2016. However, unbeknownst to Plaintiffs, KNI had organized IMS as a Florida limited liability company. Therefore, Plaintiffs retained counsel, who wrote a cease and desist letter to KNI dated June 15, 2016. The cease and desist letter made specific reference to the default judgment entered in this action.

When KNI received the cease and desist letter referencing a federal court judgment, it was the first that Fidelis and KNI had heard of a judgment. KNI contacted an attorney in Utah, Steven Rogers. Rogers sent an email to the attorney who sent the cease and desist letter at the email from which the cease and desist letter had been sent and the one listed with the Utah State Bar. Rogers also left several telephone messages with the attorney at his office over the next several months, but never received a response. Fidelis, however, did not contact Plaintiffs attorney who filed the present action.

Rogers also researched the relationship of the parties and the facts of the underlying lawsuit. The case is complicated with the transfer of IMS from Fidelis to a chain of other companies. Plaintiffs claim that when they contacted KNI in response to the letter, KNI denied that it had anything but marketing rights from Fidelis. However, Fidelis now appears to claim that KNI has its rights under the MOU. In any event, Rogers agreed to file a motoin to set aside

the default judgment but his filing of the motion was delayed by a couple of months because of his separation with his firm.

## DISCUSSION

### Motion to Set Aside Default and Motion to Dismiss

**1. Motion to Set Aside Default**

Fidelis brings this motion to set aside the default judgment under Rule 60 of the Federal Rules Civil Procedure. FRCP 60(c)(1) requires any motion made under FRCP 60(b) to be made within a reasonable time. For the defense of mistake, inadvertence, surprise, or excusable neglect, FRCP 60(c)(1) requires that the motion be made "no more than a year after the entry of the judgment or order."

The default judgment against Fidelis was entered on February 1, 2016, and Fidelis filed this motion January 31, 2017. Various business associates involved in IMS and acquainted with Fidelis discovered that a judgment existed in June of 2016. Fidelis contacted counsel in Utah to investigate. Counsel discovered the judgment, and Fidelis worked with counsel to investigate the allegations in the Complaint. Fidelis reached out to the attorney who wrote the cease and desist letter and received no response. There was some delay attributable to Fidelis' attorney leaving his law firm and then Fidelis filed this motion. The court does not find the timing of the motion to be unreasonable.

Fidelis argues that there are several grounds for setting aside the default judgment. First, the court could set aside the default judgment if improper service or lack of jurisdiction make the judgment void. The court could also set aside the default judgment because Fidelis' failure to file an answer was due to mistake, inadvertence, and excusable neglect. In addition, the court could set aside the default judgment under FRCP60(b)(6) to further the administration of justice.

Judgments are void when the rendering court was "powerless" to enter it. *VTA, Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir. 1979). If the judgment is found to be void, the relief under FRCP 60(b)(4) is mandatory. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). In this case, Fidelis claims the default judgment is void because Plaintiffs failed to establish personal jurisdiction over it in Utah and failed to properly serve Fidelis. Because the court concludes below that it lacks personal jurisdiction over Fidelis, setting aside the default judgment is mandatory.

In addition, even if the court had jurisdiction, the trial court has broad latitude in determining whether to vacate a judgment under a Rule 60(b) motion. Although granting a Rule 60(b) motion is an extraordinary procedure, default judgments are disfavored and "every effort should be made to try cases on their merits." *Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir. 1998).

Fidelis has presented several persuasive reasons for setting aside the default judgment. Allowing the default judgment to stand would grant Plaintiffs broad relief that affects parties beyond Fidelis. It is undisputed that Fidelis had no knowledge of the lawsuit when the court entered default judgment against it. There is no evidence that Fidelis' failure to respond was from a lack of diligence or carelessness. Service, although likely proper, was nonetheless questionable. Plaintiffs were aware that Fidelis had officers and directors in the United States and could have served those officers, but they chose to serve Fidelis out of the country. There is nothing wrong with choosing to serve a party subject to service outside of the country. In addition, Plaintiffs have an affidavit from a New Zealand process server stating that posting the summons and complaint on the door of the registered address is acceptable. However, the process server also told Plaintiffs that the business was vacant and appeared to have been for

some time. Given that the point of service is notice and Plaintiffs had the means to contact Fidelis' officers in the United States, the court has concerns with the manner in which service was conducted even if it was acceptable under New Zealand law.

Furthermore, relief from the default judgment appears appropriate in this matter because Fidelis may have a meritorious defense to the underlying lawsuit. The claims against Fidelis allege that Fidelis did nothing to effectuate its duties under the contract. However, Fidelis asserts that it expended money to rehabilitate IMS, paid off IMS' legal fees in connection with the patent prosecution, and contacted potential clients/platforms to use the intellectual property. It would be inequitable to allow the default judgment to stand without a hearing on the merits of the case. The interests of justice in fair adjudication of cases on the merits outweigh the burden placed on Plaintiffs if the judgment is set aside. Therefore, given the totality of the circumstances surrounding the default judgment in this case, the court concludes that, in the interest of justice, the default judgment is vacated and the case should be judged on its merits. Accordingly, the court grants Fidelis' motion to set aside default judgment under Rule 60(b).

**2. Motion to Dismiss**

Fidelis argues that this case should be dismissed for lack of personal jurisdiction. When a court's jurisdiction is contested, the plaintiff "bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Electronic Realty Assoc. v. Vaughan*, 897 F. Supp. 521, 521 (D. Kansas 1995) (citing *McNutt v. General Motors*, 298 U.S. 178, 189 (1936)). However, in the preliminary stages of litigation, the plaintiff's burden is only to establish a prima facie case that jurisdiction exists. *Electronic Realty Assocs. v. Vaughan Real Estate, Inc.,* 897 F. Supp. 521, 522 (D. Kan. 1995). "Where . . . there has been no evidentiary hearing, and the motion to

dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.*; *see also Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1995). All factual disputes are resolved in favor of the Plaintiff when determining the sufficiency of this showing. *Wenz v. Memory Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Courts recognize two types of personal jurisdiction–general and specific. Plaintiffs do not allege that there is general jurisdiction over Fidelis in Utah. Therefore, the court will only consider whether there is specific personal jurisdiction over Fidelis. The Utah Supreme Court has stated that "specific jurisdiction gives a court power over a defendant only with respect to claims arising out of particular activities of the defendant in the forum state. For such jurisdiction to exist, the defendant must have certain minimum local contacts." *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992).

"The proper test to be applied in determining whether personal jurisdiction exists over a nonresident defendant involves two considerations. First the court must assess whether Utah law confers personal jurisdiction over the nonresident defendant. . . . Second, assuming Utah law confers personal jurisdiction over the nonresident defendant, the court must assess whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *State ex rel. W.A.*, 63 P.2d 607, 612 (Utah 2002). "This test is merely a refinement of [the Utah Supreme Court's] previous tests governing the assertion of personal jurisdiction. It recognizes that the legislature may provide for the extension of personal jurisdiction in statutes other than the long-arm statute." *Id.* The court explained that "[u]nder this new test, however, any legislative enactment of personal jurisdiction, in or out of the long-arm statute, cannot justify on its own the assertion of jurisdiction. The true safeguard on the

extension of personal jurisdiction is the constitutional due process analysis, with its focus on minimum contacts and on traditional notions of fair play and substantial justice." *Id.*

In this case, Plaintiffs rely on Utah's long-arm statute as a statutory basis for jurisdiction. Utah's long-arm statute provides, in pertinent part, as follows:

> Any person ... who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising out of or related to:
> (1) the transaction of any business within this state;
> . . . .

Utah Code Ann. § 78-27-24. The statute broadly defines "transaction of business" to mean "activities of a non-resident . . in this state which affects persons or business within the State of Utah." *Id.* § 78-27-23(2). The long-arm statute states that it is intended to be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* § 78-27- 22; *see also Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999).

Consistent with the long-arm statute's command to apply it as broadly as permitted by due process, the Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998). Therefore, this court will first determine whether the exercise of personal jurisdiction over Fidelis meets federal due process standards.

Under due process standards, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (citations omitted). The "minimum contacts" necessary for specific

personal jurisdiction are established " 'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.' " *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)).

Under the first prong of the due process analysis, the court should "examine the quantity and quality of [defendant's] contacts with Utah, including prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, to determine whether the exercise of personal jurisdiction over [defendant] comports with due process." *Id.*; *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992).

For purposes of specific jurisdiction, this court looks only to the contacts between Fidelis and the State of Utah with respect to Plaintiff's breach of contract claim. Fidelis' contacts with Utah are limited to some interstate communications with Plaintiffs. It is unclear to the court whether Fidelis knew Plaintiffs were in Utah when these communications occurred. Fidelis did not enter the written agreement that is the basis for the breach of contract claim in Utah. The parties dispute where IMS' principal place of business was at the time the agreement was entered because IMS was a defunct Delaware company at the time and its owners were located in Utah. The MOU states that IMS' registered office was located in Dover, Delaware. Fidelis asserts that IMS never asserted it was a Utah company or had an office in Utah. Fidelis believed that it was

transacting business with a Delaware company.

Plaintiffs assert that it is unreasonable for Fidelis not to anticipate the possibility of being sued in Utah in relation to his agreement because Plaintiffs were located in Utah. But the mere fact that a nonresident enters into a contract with a resident of the forum is insufficient to establish jurisdiction. *Far West*, 828 F. Supp. at 914. In this case, Fidelis contracted with a Delaware company whose owners were residents of Utah. As in *Soma Medical*, the fact that Plaintiffs were based in Utah was of no consequence to Fidelis. *Id.* ("The fact that Soma happened to be a resident of Utah was of no consequence to [defendant]."). "'[T]here is no indication that Utah had anything but a fortuitous role in the parties past dealing or would have any role in their continuing relationship.'" *Id.* (quoting *Far West*, 46 F.3d at 1080). Under the agreement, Fidelis revived IMS as a Delaware company and did not register IMS to do business in Utah. Fidelis also contracted to obtain patent rights for IMS, which would have nothing to do with Utah. The only future contacts with Utah would have been potential future payments to Plaintiffs. Although Plaintiffs' future location would likely be Utah given their present location, that is not certain.

The fact that Plaintiffs may perform some of their work under the contract in Utah does not support a finding of jurisdiction in Utah over Fidelis. Plaintiffs' determination to do work in Utah was a unilateral decision. "Unilateral activity of those claiming a relationship with a nonresident defendant is not sufficient and 'it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of the laws.'" *Far West*, 46 F.3d at 1075.

In *Far West*, the court determined that the location of an escrow account in Utah that the nonresident defendant could claim funds from was no indication of purposeful availment by the

nonresident defendant because the plaintiff had unilaterally determined to place the escrow account in Utah. *Id.* Similarly, in this case, the fact that IMS' owners resided in Utah and may have communicated with Fidelis from Utah provides no indication that Fidelis purposefully availed itself of the benefits of this State.

In addition, "'[i]t is well established that phone calls and letters are not necessarily sufficient themselves to establish minimum contacts.'" *Soma Medical*, 196 F.3d at 1299 (quoting *Far West Capital Inc v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995)). In *Soma Medical*, the court found that a signature card mailed to Plaintiff in Utah, two letters sent to Plaintiff soliciting signature verification, fourteen other written communications, and a few wire transfers of funds to Utah were not enough to establish minimum contacts. *Id.* Similarly, in this case, Fidelis had incidental communications with Plaintiffs. Even if there were several emails and telephone conversations between Fidelis and Plaintiffs, it is unclear whether those emails and telephone communications were received in Utah given that some communications occurred outside of Utah as well. As in *Soma Medical*, the court finds that the communications do not establish minimum contacts with the state.

The court concludes that Fidelis has not purposefully directed its activities at Utah. Fidelis is a New Zealand company with its principal places of business in Texas and Florida. It contracted with residents of Utah to revive a Delaware company in Delaware. Fidelis' business activities were not focused on Utah. Fidelis revived IMS in Delaware but did not license IMS to do business in Utah. There is nothing in the contract indicating that the contract was to be performed in Utah and any performance of the contract Plaintiffs engaged in under the contract in Utah was unilateral conduct. The court concludes that Fidelis' contracting with Plaintiffs as owners of a Delaware company and engaging in interstate communication with Plaintiffs in

connection with the contract is not enough to find that Fidelis purposefully availed itself of the benefits and privileges of the State of Utah.  Therefore, the court finds that there are not sufficient contacts for this court to exercise specific personal jurisdiction in accordance with due process standards.  In addition, notions of fair play and justice do not support the exercise of jurisdiction over Fidelis in Utah.  In light of the court's due process analysis, it is unnecessary to consider the statutory basis for jurisdiction under Utah's long-arm statute.  Accordingly, Fidelis' Motion to Dismiss for Lack of Personal Jurisdiction is granted.

Fidelis also argues that the case should be dismissed under FRCP 12(b)(5) for insufficient service of process.  Regardless of whether an entity is a domestic or foreign corporation, the entity can be served either domestically or abroad.  Fed. R. Civ. P. 4(h).  Plaintiffs chose to attempt service in New Zealand and filed a New Zealand process server's declaration that posting the Summons and Complaint was in accordance with New Zealand law.  Despite the concerns with service the court addressed above, the court concludes that there are no grounds for dismissing the complaint based on insufficient service of process.

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Set Aside Default Judgment is GRANTED and Defendant's Motion to Dismiss for lack of personal jurisdiction is GRANTED. This action is dismissed without prejudice for lack of jurisdiction.

DATED this 31st day of May, 2017.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge